UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

LE-VEL BRANDS, LLC           §
                             §
v.                           §     CIVIL NO. 4:20-CV-398-SDJ
                             §
DMS NATURAL HEALTH, LLC      §

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant DMS Natural Health, LLC's ("DMS") Motion to Reopen Discovery and Extend Deadline to Respond to Plaintiff's Motion for Summary Judgment, (Dkt. #63). Plaintiff Le-Vel Brands, LLC ("Le-Vel") responded in opposition, (Dkt. #75), DMS filed a reply in support of its motion, (Dkt. #83), and Le-Vel filed a sur-reply, (Dkt. #90). After reviewing the motion, the subsequent briefing, the record, and the applicable law, the Court concludes that the motion is **DENIED**.

### I. BACKGROUND

Le-Vel brings this trademark-infringement, unfair-competition, and cybersquatting action against DMS, alleging that DMS "unlawfully offers and sells supplements under the infringing name and mark JUST THRIVE." (Dkt. #1 ¶ 1). Le-Vel produces and sells dietary and nutritional supplements under the mark THRIVE and various other THRIVE-formative marks. Defendant DMS also produces and sells dietary supplements and does so under the mark JUST THRIVE. Le-Vel alleges that DMS's continued use of DMS's JUST THRIVE mark constitutes infringement of Le-Vel's registered THRIVE marks.

1

The question now before the Court is whether DMS is entitled to reopen discovery for the limited purpose of obtaining testimony and documents from Shelley Swartz, a Le-Vel brand promoter whose April 2020 online commentary Le-Vel employs to demonstrate purported actual confusion between the parties' THRIVE-formative and JUST THRIVE marks in its Motion for Summary Judgment. (Dkt. #51 at 18, 35–36). DMS filed its motion two months after the close of discovery, more than a week after Le-Vel filed its potentially case-dispositive summary-judgment motion, and following a negotiation and motion to extend the dispositive-motion deadline for another unrelated deposition—which the Court granted, (Dkt. #46).

Below is a timeline of events relevant to the instant motion.

| Date (2021) | Occurrence |
| --- | --- |
| May 7 | Le-Vel purportedly "discovered evidence of actual confusion between Defendant's JUST THRIVE supplement and Le-Vel's THRIVE supplements posted on the publicly available third-party website influenster.com." (Dkt. #75 at 2); *see also* (Dkt. 63-5 at 112:1-9); (Dkt. #75-10 ¶ 2). The evidence showed a woman identified as "Shelly S." from "Hamilton, OH" on influenster.com whose April 2020 comment alleged that she purchased DMS's JUST THRIVE probiotic supplement thinking it was one of Le-Vel's THRIVE supplements because of the names of those supplements. *See* (Dkt. 63-3). |
| May 10 | Le-Vel produced this evidence. *See* (Dkt. #75-1 ¶ 2). |
| May 11 | Le-Vel supplemented its interrogatory responses to identify this evidence as "at least one instance" of actual confusion between the parties' marks. *See* (Dkt. #75-1 ¶ 3); (Dkt. #75-2 at 2–3). |
| May 20 | DMS took the combined Rule 30(b)(6) and 30(b)(1) deposition of Le-Vel's President and Chief Legal Officer Drew Hoffman. Counsel for DMS questioned Hoffman about Swartz—identifying her as both |

2

Shelly S. and Shelly Swartz—including whether he knew Swartz or knew of her, whether he knew if she was a Le-Vel customer or brand promoter, and her alleged confusion. *See generally* (Dkt. #63-5).

DMS claims that "Hoffman disclaimed any knowledge of [Swartz]." (Dkt. #63 at 3). Though Hoffman initially stated that he didn't know who Shelly S. was, he immediately went on to say that she was a Le-Vel customer and further discussed Swartz and the alleged confusion during the deposition. *See* (Dkt. #63-5 at 115–120).

During the lines of questioning about Swartz and her alleged confusion, counsel for DMS introduced exhibits that included (1) screenshots of Swartz's personal Facebook page on which she identifies herself as an independent brand promoter of Thrive by Le-Vel and (2) screenshots of a Shelly Swartz Le-Vel promoter website address. (Dkt. #63-5 at 118–121, 126). DMS apparently found both webpages through its own investigation. *See* (Dkt. #75 at 3).

| | |
|---|---|
| May 24, 12:06 p.m. | DMS's counsel sent Le-Vel's counsel a discovery letter regarding deposing two additional Le-Vel executives. The letter also requested documents related to Shelly Swartz, including: internal compliance tickets related to "Shelly Swartz confusion"; brand-promoter agreements, "and specifically Shelly Swartz Agreement"; and "documentation relating to the monitoring of [Le-Vel's] brand promoters." (Dkt. #71 at 3); (Dkt. #75 at 3); (Dkt. #75-1 ¶ 8). |
| May 24, 10:37 p.m. | Le-Vel produced Swartz's declaration, executed May 24, 2021. Le-Vel also produced its standard brand-promoter agreement. (Dkt. #75-5, #75-4); (Dkt. #75-1 ¶ 9). |
| May 24, 11:59 p.m. | Discovery closed. (Dkt. #36). |
| June | Following negotiations among the parties and a conference call with the Court, the parties filed their Third Joint Motion to Extend Certain Case Deadlines on June 11, requesting an extension of dispositive-motion and pre-trial deadlines to facilitate "one remaining deposition of DMS's damages expert." (Dkt. #45 at 1). The parties represented that other than the "one remaining deposition," "fact and expert discovery has concluded in this matter." (Dkt. #45 at 1). The Court granted the parties' joint motion and issued an amended scheduling order on June 15. (Dkt. #46, #47). |

| July 16 | Le-Vel filed its potentially case-dispositive Motion for Summary Judgment, which cites Swartz's alleged confusion as the only instance of known "actual confusion" between the parties' THRIVE-formative marks. (Dkt. #51 at 35–36). The motion included the same Swartz declaration produced on May 24 as an exhibit. (Dkt. #51-42). |
| --- | --- |
| May 25 – July 19 | Le-Vel avers that "Defendant never again mentioned Ms. Swartz or her declaration" during this period, including during the June negotiations regarding extending certain deadlines to accommodate an unrelated deposition. (Dkt. #75 at 4). |
| July 20 | DMS notified Le-Vel that it intended to take discovery from Swartz. (Dkt. #75-1 ¶ 15). |
| July 22 | DMS subpoenaed Swartz for documents and testimony without leave of Court. (Dkt. #75-1 ¶ 17); (Dkt. #75-11, #75-12). |
| July 27 | DMS filed its instant Motion to Reopen Discovery and Extend Deadline to Respond to Plaintiff's Motion for Summary Judgment. (Dkt. #63). DMS seeks to reopen discovery for the sole purpose of obtaining documents and testimony from Swartz and argues that "DMS is entitled to test the veracity of Ms. Swartz's declaration to defend against this critical [actual confusion] element of Le-Vel's motion," asserting that it was surprised by this new evidence in Le-Vel's summary-judgment motion and could not have reasonably sought the requested discovery earlier because it did not know Swartz's "true identity" until the last day of discovery. (Dkt. #63 at 3, 5). |

Though the testimony DMS seeks is arguably important to testing the veracity of the "actual confusion" question, DMS's two-month delay in requesting this discovery is inexcusable and demonstrates a dearth of good cause for granting the motion under the Fifth Circuit's Rule 16(b) standard. The motion will therefore be denied.

## II. Legal Standard

Because "discovery-completion deadlines are set in scheduling orders," a court's order reopening discovery "is an order to modify the scheduling order." *Crawford v. C.R. Bard, Inc.,* No. 6:19-CV-412, 2020 WL 2468771, at \*2 (E.D. Tex. May 13, 2020) (citation omitted). Federal Rule of Civil Procedure 16(b) "authorizes the district court to control and expedite pretrial discovery through a scheduling order." *Geiserman v. MacDonald*, 893 F.2d 787, 790 (5th Cir. 1990). Rule 16 provides that a scheduling order may be modified "only for good cause" and "with the judge's consent." FED. R. CIV. P. 16(b)(4); *see also Colonial Freight Sys., Inc. v. Adams & Reese, L.L.P.*, 524 F.App'x 142, 145 (5th Cir. 2013) (concluding district court did not abuse discretion in denying motion to reopen discovery where movant had not shown good cause); *Leza v. City of Laredo*, 496 F.App'x 375, 377 (5th Cir. 2012) (same); *Zilberman v. Caroffer, LLC*, No. 4:15-CV-589, 2016 WL 3060081, at \*2 (E.D. Tex. May 31, 2016) (citing *Grant v. City of Hous.*, 625 F.App'x 670, 679 (5th Cir. 2015)) ("Federal Rule of Civil Procedure 16(b)(4) governs a party's request to extend the discovery period after the deadline established by a scheduling order has elapsed.").

Trial courts have "broad discretion to preserve the integrity and purpose of the pretrial order" in making the good-cause determination. *Geiserman*, 893 F.2d at 790 (quoting *Hodges v. United States*, 597 F.2d 1014, 1018 (5th Cir. 1979)). To meet the Rule 16(b) good-cause standard, the movant must "show that the deadlines [could not have] reasonably be[en] met despite the diligence of the party needing the extension." *S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 535

(5th Cir. 2003) (quoting 6A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1522.1 (2d ed. 1990)); *see also Zilberman*, 2016 WL 3060081, at *2. The Fifth Circuit considers four factors when determining whether the movant has shown good cause under Rule 16(b)(4): "(1) the explanation for the failure to timely [comply with the scheduling order]; (2) the importance of the [modification]; (3) potential prejudice in allowing the [modification]; and (4) the availability of a continuance to cure such prejudice." *Grant*, 625 F.App'x at 679 (quoting *Squyres v. Heico Cos.*, 782 F.3d 224, 237 (5th Cir. 2015)).[1]

### III. DISCUSSION

## A. DMS's Explanation for Failing to Timely Seek Documents and Testimony from Swartz

The most important factor in the good-cause analysis is the moving party's diligence. *See Allergan, Inc. v. Teva Pharms. USA, Inc.*, No. 2:15-CV-1455-WCB, 2017 WL 119633, at *3 (E.D. Tex. Jan. 12, 2017) ("The most important factor bearing on the 'good cause' inquiry under Rule 16(b)(4) is whether the party seeking to modify the scheduling order can show that it has been diligent in pressing its claims but despite its diligence could not reasonably have met the scheduling deadline."); *Cub USA Servs., LLC v. Jetta Operating Co., Inc.*, No. 3:14-CV-2508-D, 2016 WL 1028128,

---

[1] The Court notes that DMS asserts in its motion that Federal Rule of Civil Procedure 56(d) "expressly contemplates the instant situation and provides an avenue of relief for [DMS] to obtain limited discovery and extend the time to respond to Le-Vel's Motion for Summary Judgment," as Rule 56(d) "provides relief to a nonmoving party when it is surprised with new evidence in the context of a summary judgment motion." (Dkt. #63 at 2). This rule does not apply in this context. Any "surprise" occurred at the close of discovery—not at the summary-judgment phase—and, as explained herein, DMS cannot credibly characterize Le-Vel's use of Swartz's declaration as a surprise.

at *2 (N.D. Tex. Mar. 15, 2016) ("When applying this multi-factor test, the court usually denies motions to amend the scheduling order when the moving party fails to demonstrate that, despite its diligence, it could not have reasonably met the scheduling deadline."); *Est. of Hooker-Murray v. Dall. Cnty.*, No. 3:07-CV-0867-P, 2008 WL 11424336, at *2 (N.D. Tex. Dec. 3, 2008) ("With regard to [the Rule 16(b)(4)] factors, the primary focus is on diligence.").

Additionally, courts have found a lack of diligence where the movant fails to timely move for an extension following the discovery deadline when evidence was revealed near the end of the discovery period. *See, e.g.*, *Hooker-Murray*, 2008 WL 11424336 at *2–3 (denying a motion to reopen discovery to allow one deposition where the movant waited three months after discovery closed and one month after the opposing party moved for summary judgment to file its motion to reopen discovery, despite the movant knowing three weeks before they filed the motion that the prospective deponent was unavailable).

There are two questions at play regarding DMS's diligence. First, why did DMS not request documents and testimony from Swartz or Swartz's contact information before discovery closed on May 24? And second, why did DMS not request documents and testimony from Swartz in the two months after discovery closed and before Le-Vel filed its motion for summary judgment?

DMS argues that it was unable to take discovery from Swartz during the designated discovery period because "Le-Vel waited until the very last hour of the discovery period to produce Ms. Swartz's declaration," and because Le-Vel did not

identify Swartz in its initial disclosures, did not subpoena Swartz during discovery, did not disclose the "existence of a woman called 'Shelly S.'" until two weeks before discovery closed, and did not produce documents indicating Swartz's "true identity" until the last day of discovery. (Dkt. #63 at 5). In support of this assertion, DMS admits that Le-Vel produced screenshots of online posts made by "Shelly S." in which Shelly S.—whose profile photo and "Hamilton, Ohio" tag were visible in the post—claimed to have purchased a DMS product and confused it with a Le-Vel product. (Dkt. #63 at 5–6 (citing (Dkt. #63-2 ¶ 4))). DMS further admits that it researched Shelly S. online ahead of Hoffman's deposition and "obtained a number of documents about a person named Shelly Swartz." (Dkt. #63 at 6 (citing (Dkt. #63-2 ¶ 5); (Dkt. #63-4))). The exhibit DMS cites to is a Facebook profile of Shelly Swartz, whose location is tagged as Hamilton, Ohio, whose "about" information lists in four different line items that she is a promoter for or otherwise affiliated with Le-Vel, and whose "Photos" section on her profile includes a photo of her with Le-Vel's THRIVE products. *See* (Dkt. #63-4 at 1–2). These are the same exhibits DMS introduced during the Hoffman deposition.

Despite all this, DMS claims that it "was not on notice of Ms. Swartz's complete identity until the last hour of the last day of discovery." (Dkt. #63 at 8). This argument fails for several reasons. First, DMS could have reasonably assumed Shelly S. was Shelly Swartz given its independent research and its introduction of her Facebook profile during the Hoffman deposition—even if Hoffman claimed not to have details of any relationship Le-Vel had with Swartz. Second, DMS was clearly on notice of

8

Le-Vel's intent to present Swartz's online commentary as an example of alleged actual confusion to support its trademark-infringement claim given that Le-Vel identified the commentary in question in a supplemental response to interrogatories during the discovery period, (Dkt. #75-2 at 2–3), and Hoffman explicitly discussed Swartz's alleged confusion during his deposition, (Dkt. #63-5 at 114–120). Thus, the record does not support DMS's suggestion that, even at the end of the discovery period, it could not identify Swartz and was unaware that Le-Vel might use Swartz's influenster.com post as evidence of alleged actual confusion. Indeed, the only evidence that DMS exercised diligence during the discovery period is its request for Le-Vel's brand-promoter agreement with Swartz, along with the other questions related to Swartz that it asked during the Hoffman deposition, and its email to Le-Vel's counsel on May 24 reiterating its request for those documents.

Even more puzzling, however, is DMS's failure to address its "critical" need to depose Swartz regarding her alleged confusion any time after it received Swartz's declaration on May 24 until July 20—two months after discovery closed and four days after Le-Vel filed its summary-judgment motion. As noted herein, during this time, the parties negotiated an extension of discovery and the dispositive-motion deadline to accommodate an unrelated deposition. Even if the Court were to accept DMS's strained argument that it did not know Swartz's "true identity" until May 24, DMS should have filed its motion to reopen discovery as soon as possible after May 24.

In short, "[t]here is simply no justification whatsoever for [DMS's] delay in requesting an extension to the discovery deadlines in this case." *Hooker-Murray*,

2008 WL 11424336, at *2. This factor thus weighs strongly in favor of denying the motion.

**B. Importance of the Requested Swartz Deposition and Documents**

DMS argues that deposing Swartz is critical to testing the veracity of her declaration so that DMS can effectively respond to the only evidence Le-Vel provides for its actual confusion argument, which DMS asserts is Le-Vel's "central claim" in its summary-judgment motion. (Dkt. #63 at 3).

It is true that to prevail on its claim for trademark infringement under the Lanham Act, Le-Vel must show that (1) "it possesses valid trademarks" and (2) DMS's use of Le-Vel's trademarks "creates a likelihood of confusion as to source, affiliation, or sponsorship." *Nola Spice Designs, L.L.C. v. Haydel Enters.*, 783 F.3d 527, 536 (5th Cir. 2015) (citing, among others, 15 U.S.C. § 1114(1)). And it is also true that "[t]here can be no more positive or substantial proof of the likelihood of confusion than proof of actual confusion." *World Carpets, Inc. v. Dick Littrell's New World Carpets*, 438 F.2d 482, 489 (5th Cir. 1971) (citation omitted). But "[e]vidence of actual confusion is not necessary to a finding of a likelihood of confusion," as there are many factors courts consider in making the likelihood-of-confusion determination and no one factor—including evidence of actual confusion—is dispositive. *Elvis Presley Enters., v. Capece*, 141 F.3d 188, 194, 203 (5th Cir. 1998).

To be sure, a deposition of Swartz before the summary-judgment period could have probed the truthfulness of her claim of confusion and developed any potential inconsistencies her confusion claims might present prior to a trial setting. *See*

10

(Dkt. #63 at 9 (DMS alleging that there are inconsistencies between Swartz's online post and her declaration and that there is no proof Swartz ever purchased DMS's products)). But evidence of actual confusion is not necessary to a finding that there is a likelihood of confusion, and the importance of the discovery DMS seeks is outweighed by its unwarranted and inexplicable delay in requesting it.

## C. Prejudice to Le-Vel if DMS's Motion to Reopen Discovery is Granted

DMS asserts that a short continuance to allow DMS to take discovery from Swartz and to file a response[2] to Le-Vel's summary-judgment motion would not prejudice Le-Vel. But Le-Vel had already moved for summary judgment on the existing record before DMS requested the extension—and that, not the amount of time requested by DMS—is what would cause prejudice. Le-Vel "would be prejudiced by permitting discovery to continue after [it has] submitted [its] dispositive motion in this matter." *Hooker-Murray*, 2008 WL 11424336, at *2. This factor therefore weighs against granting the motion.

## D. Availability of a Continuance to Cure the Prejudice[3]

Because Le-Vel is prejudiced by DMS waiting until after Le-Vel moved for summary judgment on the existing record to file its motion to reopen discovery, a

---

[2] Given the timing of this Order, the Court notes that if it were to grant DMS's motion, it would be granting DMS leave to file a supplemental response to Le-Vel's summary-judgment motion.

[3] The Court notes that DMS thought it "need not address" this factor in its motion given its belief that Le-Vel would suffer no prejudice from a limited reopening of discovery and a short extension of the response period to Le-Vel's summary-judgment motion. (Dkt. #63 at 10 (citation omitted)).

continuance would not cure the prejudice. This factor therefore also weighs against granting the motion.

## IV. CONCLUSION

Though the requested discovery is arguably important, DMS's inexcusable delay in requesting the reopening of discovery, the prejudice Le-Vel would face if the Court allowed discovery after it filed its summary-judgment motion, and the lack of the ability of a continuance to cure that prejudice weigh strongly against granting DMS's motion.

It is therefore **ORDERED** that DMS's Motion to Reopen Discovery and Extend Deadline to Respond to Plaintiff's Motion for Summary Judgment, (Dkt. #63), is **DENIED**.

**So ORDERED and SIGNED this 28th day of March, 2022.**

SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE