UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| LE-VEL BRANDS, LLC | § |
| | § |
| v. | § CIVIL NO. 4:20-CV-398-SDJ |
| | § |
| DMS NATURAL HEALTH, LLC | § |

### MEMORANDUM OPINION AND ORDER

Before the Court are Plaintiff Le-Vel Brands LLC's ("Le-Vel") Motion to Amend Complaint, (Dkt. #110), and Motion to Strike Jury Demand, (Dkt. #101). Defendant DMS Natural Health, LLC ("DMS") responded in opposition to both motions. (Dkt. #113). Le-Vel filed a reply in support of its motion for leave to amend its complaint, (Dkt. #114), and a reply in support of its motion to strike the jury demand, (Dkt. #115). Having considered the motions, the subsequent briefing, and the applicable law, the Court concludes that the motions should be **GRANTED**.

### I. BACKGROUND

Le-Vel brought this action against DMS in May 2020, demanding a jury trial. (Dkt. #1). In its original complaint, Le-Vel brought claims for: (1) trademark infringement under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1); (2) trademark infringement, false designation of origin, passing off, and unfair competition under Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), (3) common law trademark infringement, passing off, and unfair competition; and (4) cybersquatting under Section 43(d) of the Lanham Act, 15 U.S.C. § 1125(d). (Dkt. #1). Premised on those claims, Le-Vel sought a number of equitable and legal

1

remedies, including the equitable remedies of disgorgement and injunctive relief and the legal remedies of compensatory damages and punitive damages.

DMS filed its answer on September 17, 2020, asserting affirmative defenses of laches and judicial estoppel, bringing a counterclaim for a declaratory judgment of no trademark infringement, and making its own demand for a jury trial. (Dkt. #16). On September 28, 2020, the Court entered a Scheduling Order, (Dkt. #23), which has since been amended. *See* (Dkt. #34, #36, #47). The deadline for Le-Vel to file amended pleadings was January 15, 2021. (Dkt. #23 at 1). The Court dismissed DMS's declaratory-judgment counterclaim and struck its judicial-estoppel affirmative defense on July 20, 2021. (Dkt. #54). The Court notes that the parties' summary-judgment motions remain pending in this case. (Dkt. #51, #52).

On December 20, 2021, just over a month before the planned trial setting, Le-Vel moved to strike its jury demand, asserting that it waives its compensatory damages, punitive damages, and state-law claims—leaving only federal equitable claims at issue, none of which carry a right to a jury trial. (Dkt. #101).

The following day, the parties filed a joint Stipulation of Partial Dismissal with Prejudice of Plaintiff's Compensatory Damages Claims and Common Law Infringement Claim. (Dkt. #102). The parties stated that they stipulated, pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii), that Le-Vel's claims for Texas common law trademark infringement, passing off, and unfair competition; demand for award of compensatory damages; demand for award of punitive damages; and demand for award of pre-judgment and post-judgment interest were dismissed with

prejudice. (Dkt. #102). The Court struck the stipulation as an improper attempt to dismiss certain claims under Rule 41(a), (Dkt. #103), which allows parties to stipulate to "dismiss[al] [of] an *action* without a court order." FED. R. CIV. P. 41(a)(1)(A) (emphasis added); *see also Bailey v. Shell W. E&P, Inc.*, 609 F.3d 710, 720 (5th Cir. 2010) (citation omitted) ("Rule 41(a) dismissal only applies to the dismissal of an entire action—not particular claims."). The Court's Order also instructed Le-Vel that, to effectuate its desire to no longer assert certain claims against DMS, it must move to amend its complaint. (Dkt. #103); *see also Williams v. Seidenbach*, 958 F.3d 341, 347 (5th Cir. 2020) ("A dismissed claim remains a part of the case, absent amendment of the complaint[.]").

Pursuant to the Court's Order, Le-Vel moved for leave to amend its complaint under Federal Rule of Civil Procedure 15 on December 28, 2021, to remove the specified claims. (Dkt. #110). The Court then stayed all deadlines pending the Court's consideration of Le-Vel's motions for leave to amend and to strike the jury demand and ordered that the trial set for January 24, 2022, would be rescheduled. (Dkt. #112).

## II. LEGAL STANDARDS

### A. Leave to Amend[1]

"A district court possesses broad discretion in its decision whether to permit amended complaints." *Olivarez v. T-Mobile USA*, 997 F.3d 595, 602 (5th Cir. 2021)

---

[1] The Court recognizes that its Order striking the parties' joint stipulation of dismissal of claims instructed Le-Vel to move pursuant to Rule 15 to amend its complaint. (Dkt. #103). However, as DMS points out in its response to Le-Vel's motion, the Rule 16(b) good-cause standard is the threshold inquiry given that the deadline for Le-Vel to amend its pleadings set in the Scheduling Order had passed by the time the motion was filed. *See* (Dkt. #23 at 1).

3

(quoting *Crostley v. Lamar Cnty.*, 717 F.3d 410, 420 (5th Cir. 2013)), *cert. denied*, 142 S.Ct. 713 (2021). In the Fifth Circuit, Rule 16(b) "governs amendment of pleadings after a scheduling order deadline has expired." *S&W Enters., L.L.C. v. SouthTrust Bank of Ala.*, NA, 315 F.3d 533, 536 (5th Cir. 2003). A scheduling order may be modified "only for good cause and with the judge's consent." FED. R. CIV. P. 16(b)(4).

Trial courts have "broad discretion to preserve the integrity and purpose of the pretrial order" in making the good-cause determination. *Geiserman v. MacDonald*, 893 F.2d 787, 790 (5th Cir. 1990) (quotation omitted). To meet the Rule 16(b) good-cause standard, the movant must "show that the deadlines [could not have] reasonably be[en] met despite the diligence of the party needing the extension." *S&W Enters.*, 315 F.3d at 535 (quoting 6A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1522.1 (2d ed. 1990)). Courts consider four factors when determining whether the movant has shown good cause under Rule 16(b)(4): "(1) the explanation for the failure to [timely move for leave to amend]; (2) the importance of the [amendment]; (3) potential prejudice in allowing the [amendment]; and (4) the availability of a continuance to cure such prejudice." *Id.* at 536 (quotation omitted).

Once the movant has demonstrated good cause, the "more liberal standard of Rule 15(a) appl[ies] to the district court's decision to grant or deny leave." *Id.* Under Rule 15(a), courts "should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2). This rule "evinces a bias in favor of granting leave to amend." *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 566 (5th Cir. 2002) (quotation

omitted). In making this determination, courts may consider factors "such as whether there has been undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment." *Id.* (quotation omitted).

## B. Right to a Jury Trial

The Seventh Amendment preserves the right to a jury trial for suits at common law. U.S. CONST. amend. VII. Rule 38 further provides that the "right of trial by jury as declared by the Seventh Amendment to the Constitution—or as provided by a federal statute—is preserved to the parties inviolate." FED. R. CIV. P. 38(a). A party may demand a jury on an issue "triable of right by a jury," and a proper demand may be withdrawn "only if the parties consent." FED. R. CIV. P. 38(b), (d). Rule 39 provides that, upon a jury demand, a case will be tried in front of a jury unless the parties stipulate to a non-jury trial or "the court, on motion or on its own, finds that on some or all of those issues there is no federal right to a jury trial." FED. R. CIV. P. 39(a).

## III. DISCUSSION

Le-Vel argues that the Court should allow its amended complaint and strike the jury demand because the changes to its complaint remove claims from this litigation, streamline issues for trial, focus the case on the crux of its claims—federal trademark infringement and unfair competition under the Lanham Act—and will expedite trying the case from the bench rather than in front of a jury.

DMS counters that Le-Vel "ambushed DMS with its intention to withdraw its claims that support a right to a jury trial" as a "calculated tactic to disrupt DMS's

5

preparation for trial" one month before trial was set to begin. (Dkt. #113 at 1). DMS then explains that it is not opposed to Le-Vel dropping its specific-damages and common-law claims—and conceded that DMS agreed to the initial stipulation of dismissal and that if amendment is permitted, no right to a jury remains—but opposes both motions to preserve its opposition to striking the jury and its argument that striking the jury would greatly prejudice DMS. *See* (Dkt. #113 at 1 n.1, 3, 4).

## A. Leave to Amend

The Court first considers the Rule 16(b)(4) good-cause factors regarding Le-Vel's motion for leave to amend its complaint. *See S&W Enters.*, 315 F.3d at 535.

### i. Le-Vel's explanation for its delay

The first good-cause factor, Le-Vel's explanation for failing to timely move for leave to amend, is neutral. Le-Vel explains that it waited until a month before the planned trial setting to drop certain claims against DMS because it only determined that it would not assert compensatory damages and state-law claims at trial when developing its trial strategy during the pre-trial period. After making this determination, says Le-Vel, it promptly notified DMS of its decision and obtained DMS's consent to jointly stipulate to the dismissal of the specified claims.

As described herein, Le-Vel only moved for leave to amend after the Court struck the joint stipulation as improper. Le-Vel could have arguably made its determination sooner, which weighs against granting leave. However, three facts weigh in favor of granting leave: (1) Le-Vel decided to waive the specified claims during the pre-trial period; (2) Le-Vel moved for leave to amend pursuant to the

Court's order; and (3) any argument that DMS was surprised by Le-Vel's attempt to drop claims against DMS at this point in the proceedings is questionable, given its stipulation to dropping the same claims Le-Vel's motion seeks to remove. Therefore, the first good-cause factor, the explanation for the failure to timely move for leave to amend, is neutral.

### ii. Importance of amendment

The second factor, the importance of the amendment, weighs in favor of granting the motion. As Le-Vel asserts, the proposed amendment removes claims and requests for relief from the litigation, focuses the litigation on the key issues Le-Vel intends to raise at trial, decreases the amount of expert testimony necessary, and negates the need to try the case in front of a jury. These factors save both judicial and public resources.

DMS argues that Le-Vel's withdrawal of the specified claims will only save "minimal" time at trial because no witnesses will be eliminated and Le-Vel would employ the same testimony and evidence to support its federal trademark infringement claims and its common-law claims. But "narrowing the landscape, as opposed to adding in new claims and facts, makes the case easier for everyone in the long run." *Kemp v. City of Hous.*, No. CV H-10-3111, 2013 WL 12320451, at *3 (S.D. Tex. Apr. 4, 2013) (finding good cause to allow amendment of complaint where plaintiffs sought to "amend their complaint to narrow the scope of the claims").

Allowing the amendment is also important because the alternative, forcing Le-Vel to go to trial on claims it has acknowledged should be dismissed, and that

7

DMS has previously agreed should be dismissed, is nonsensical, wasting the time and resources of the Court and the parties. *See, e.g.*, *Lone Star Ob/Gyn Assocs. v. Aetna Health, Inc.*, 557 F.Supp.2d 789, 793 (W.D. Tex. 2008), *remanded on other grounds*, 579 F.3d 525 (5th Cir. 2009) (finding that an amendment to remove claims was important because if it was not allowed, the litigant would be "forced to pursue claims that it does not wish to pursue," and such a result "would be counter to judicial economy and the interests of justice.").

### iii. Prejudice

The third factor, the potential prejudice if the amendment is allowed, forms the heart of the parties' dispute. DMS will suffer no prejudice from the Court granting Le-Vel leave to amend standing alone. But DMS argues that it will be prejudiced by the effect of that amendment: removing the right to a jury trial.

In this regard, however, it is difficult to reconcile DMS's argument with its actions at this pre-trial stage of proceedings. Though the Court struck the parties' joint stipulation of dismissal, DMS agreed to the dismissal of the very same claims Le-Vel now seeks to drop—the only difference is the means by which Le-Vel seeks that end. Not only did DMS agree to the dismissal, DMS knew of Le-Vel's intent to move to strike the jury resulting from the specified claims being dismissed *before* it agreed to the stipulation—indeed, Le-Vel's motion to strike was filed the day before the parties' joint stipulation and after the parties had "multiple discussions on the issue." (Dkt. #113 at 3); *see also* (Dkt. #110-3). But "[t]he right to trial by jury is determined by the issues, not by the pleadings." *Armco, Inc. v. Armco Burglar Alarm*

8

*Co.*, 693 F.2d 1155, 1158 (5th Cir. 1982). Therefore, DMS is in the same position now, following Le-Vel's motion for leave to amend, as it would have been had the Court accepted the parties' stipulation. The assertion that DMS is prejudiced by something it previously agreed to is unpersuasive.

Even so, DMS argues that prejudice is the key consideration, citing the Fifth Circuit's decision in *Rachal v. Ingram Corp.* for the proposition that, if amending a complaint would result in eliminating any right to a jury trial for the nonmovant, "then the motion, absent other factors, should ordinarily be granted," however, a "plaintiff may not be permitted to 'ambush' the defendant by amending shortly before trial" to withdraw a jury demand. (Dkt. #113 at 6 (quoting *Rachal*, 795 F.2d 1210, 1217 & n.11 (5th Cir. 1986) (holding that the district court did not abuse its discretion in granting leave to amend and striking the jury demand in an admiralty action))). But this proposition cuts against DMS because it stipulated to the dismissal of certain claims knowing that Le-Vel intended to move to strike the jury demand. Under these circumstances, it is unclear how DMS was "ambushed" by the present motion for leave to amend.

Further, DMS asserts that it will be prejudiced by having to prepare new pre-trial briefs and submissions for a bench trial as opposed to a jury trial, because it made strategic decisions throughout the litigation with an eye toward trying the case in front of a jury, because it spent a significant amount of money on a portion of an expert report regarding actual damages that will no longer be necessary, and because of the lateness of the request.

It is true that the parties have already submitted some pre-trial filings, including limine motions and the proposed pre-trial order. (Dkt. #104, #106, #108). However, nearly a month before the planned trial setting, the Court stayed all remaining pre-trial deadlines pending the resolution of the two present motions, suspending the parties' obligation to complete their remaining pre-trial filings for the time being. (Dkt. #112). Further, DMS fails to acknowledge that streamlining the claims to be tried will undoubtedly save both parties time and effort at trial and for any post-trial filings. And again, the alternative makes little sense—forcing Le-Vel to pursue claims at trial that both parties have agreed should be dismissed, not tried.

In addition to the purported additional burden such a result would create, DMS asserts that "a change to a bench trial means that DMS wasted time and money in preparing a defense to the claims Le-Vel now seeks to dismiss." (Dkt. #113 at 2). But this was true when DMS agreed to the stipulation. And "[s]uch an argument . . . is unavailing for Defendant[] [is] seemingly suggesting that [the Court] must force [Le-Vel] to proceed on a claim which [Le-Vel] itself deems fruitless." *Nike, Inc. v. "Just Did It" Enters.*, No. 91 C 4001, 1994 WL 258879, at *1 (N.D. Ill. June 9, 1994) (granting plaintiff's motion to amend complaint and strike jury demand where plaintiff could have filed the motion sooner and defendant argued it would be prejudiced if plaintiff was allowed to drop a certain claim because defendant had prepared to address the issue at trial).

Contrary to DMS's argument that it will be prejudiced if the jury is struck so close to trial, the Fifth Circuit has found "no merit" to the claim that a party was

"deprived" of its right to trial by jury where the motion to strike was filed "on the eve of trial." *See Armco*, 693 F.2d at 1158 (affirming district court's treatment of a jury verdict as advisory following the district judge's decision to allow a case to be tried before a jury—with the understanding that he would treat the jury's findings of fact as advisory if he later determined that there was no right to a jury trial pursuant to a motion to strike the jury filed on the eve of trial).

The cases that DMS relies on do not save its argument. DMS argues that moving to strike the jury demand just weeks before trial, after discovery was conducted under the assumption of a jury trial, is "indicative of an ambush" and thus prejudicial, citing *Adams v. Falcon Drilling Co.*, No. CIV.A. 97-1143, 1998 WL 195981, at *1–2 (E.D. La. Apr. 20, 1998). (Dkt. #113 at 7–8). But the district court's reasoning in *Adams* is limited to the statutory right to a jury trial conferred by the Jones Act under the court's admiralty jurisdiction. *See* 1998 WL 195981, at *1, *2 (construing plaintiff's request to strike the jury as a motion to designate the matter as one arising under Rule 9(h) and explaining that the Jones Act gives only the plaintiff the right to choose a jury trial); *see also* FED. R. CIV. P. 38(e) ("These rules do not create a right to a jury trial on issues in a claim that is an admiralty or maritime claim under Rule 9(h).").

DMS also cites the Fifth Circuit's decision in *United States v. Unum, Inc.* for the proposition that forcing a party to change its trial strategy from a bench trial to a jury trial on a week's notice "would have worked a substantial hardship." 658 F.2d 300, 303 (5th Cir. 1981) (finding no abuse of discretion in a district court's denial of a

Rule 39(b) motion for a jury trial filed more than two years after the deadline). But DMS concedes that *Unum* involved the opposite fact pattern of the present case— moving *for* a jury when no demand has been made. And, notably, Rule 38(b) requires the party demanding a jury to do so within fourteen days of service of the last pleading directed at the issue, whereas Rule 39(a), which governs the instant motion to strike, sets no time limit for the Court to strike a jury demand. FED. R. CIV. P. 38(b)(1); 39(a)(2).

DMS's reliance on *Team Contractors, LLC v. Waypoint NOLA, LLC* is likewise misplaced. No. CV 16-1131, 2019 WL 1545177, at *2 (E.D. La. Apr. 9, 2019). The *Waypoint* court denied the plaintiff's motion to strike the defendant's jury demand where the plaintiff sought to enforce a contractual waiver to jury trial for the first time twelve days before a retrial of a case that had already been tried in front of a jury once before. *Id.* at *1–2. The Court concluded that the plaintiff consented to a jury trial due to the late stage of the case, the "years" the plaintiff waited before moving to strike the jury, the plaintiff's "statement in the pretrial order for the upcoming . . . trial that this is a jury trial," and because prejudice to the defendant "would result from enforcing the waiver on the eve of trial." *Id.* at *3. Because similar circumstances are not present here, *Waypoint* is distinguishable and does not support DMS's argument.

In sum, DMS will not be prejudiced by the Court striking the jury demand. *See CPI Plastics, Inc. v. USX Corp.*, 22 F.Supp.2d 1373, 1378 (N.D. Ga. 1995) ("[N]o real prejudice to Defendant results from striking the jury demand" on a motion filed a

12

month before trial; "[w]hile all parties have operated under the assumption that the trial would be before a jury up to this point, two weeks remain before the trial to allow the parties to adjust their presentation for a bench trial."). Further, "trial before the Court will require less preparation than trial before a jury." *Id.; see also JPA, Inc. v. USF Processors Trading Corp.*, No. CIV.A. 3:05-CV-0433P, 2006 WL 740401, at *12 (N.D. Tex. Mar. 15, 2006) (citing *Armco*, 693 F.2d at 1158) ("A court has the discretion to grant a motion to strike a jury demand at any time, even on the eve of trial."). This factor therefore weighs in favor of granting Le-Vel's motion to amend.

### iv. Availability of a continuance to cure any prejudice

The fourth factor, the availability of a continuance to cure any prejudice, is not applicable because the Court has concluded there is little or no prejudice to DMS. In its response to the present motions, DMS requested that, should the Court grant the motion for leave to amend, and therefore plan to hold a bench trial, that the Court grant DMS a continuance to prepare for a bench trial and order Le-Vel to compensate DMS for the costs and fees it has spent preparing for a jury trial. (Dkt. #113 at 1). Because there is little or no prejudice, DMS's request for fees is denied. And a continuance has effectively already been granted by the Court's stay of all deadlines pending the disposition of the present motions.

For these reasons, the Court concludes that there is good cause under Rule 16(b)(4) to grant Le-Vel leave to amend its complaint.

13

### v. Rule 15(a)

Rule 15(a)'s more liberal standard also dictates in favor of granting Le-Vel leave to amend its complaint. Given the reasons for the timing of Le-Vel's motion to amend, discussed above, there has been no undue delay. Though DMS asserts that Le-Vel filed its motion in bad faith as a "calculated tactic to disrupt DMS's preparation for trial," (Dkt. #113 at 1), there is no evidence of bad faith. To the contrary, DMS itself agreed to the relief Le-Vel now seeks via its motion for leave to amend, knowing that removing the specified claims would result in Le-Vel moving to strike the jury. There have been no repeated failures to cure deficiencies by amendments previously allowed, as this is Le-Vel's first attempt to amend its complaint. As discussed above, there is no undue prejudice to DMS. And lastly, amendment is not futile, as the amendment removes claims. Amendment is therefore also warranted under Rule 15(a).

* * *

Le-Vel's Motion to Amend Complaint, (Dkt. #110), is **GRANTED**. Its First Amended Complaint, (Dkt. #111), is deemed properly filed and is now operative.

### B. Striking the Jury Demand

Having granted Le-Vel leave to amend its complaint, thus removing Le-Vel's actual damages and common-law claims from this action, the Court turns to Le-Vel's motion to strike the jury demand. There is no dispute that, because the Court has granted Le-Vel leave to amend, there is no right to a jury trial.

Le-Vel's First Amended Complaint asserts causes of action for: (1) trademark infringement under Section 32(1) of the Lanham Act; (2) trademark infringement, false designation of origin, passing off, and unfair competition under Section 43(a)(1)(A) of the Lanham Act; and (3) cybersquatting under Section 43(d) of the Lanham Act. (Dkt. #111). Le-Vel seeks injunctive and declaratory relief, along with disgorgement, costs, and attorney's fees. (Dkt. #111 at 27–29).

Following the Court's dismissal of DMS's counterclaim and striking of its affirmative defense of judicial estoppel, DMS asserts only one affirmative defense: laches. *See* (Dkt. #16, #54).

The Lanham Act is silent on the issue of jury trial. *See Sanijet Corp. v. Jacuzzi Inc.*, No. CIV.A. 3:01-CV-897-P, 2002 WL 1398546, at *1 (N.D. Tex. Feb. 14, 2002). Therefore, any right to a jury trial must arise under the Seventh Amendment, which guarantees the right to trial by jury in "Suits at common law"—those in which legal rights are to be determined, as opposed to suits in which equitable rights and remedies alone are at issue. U.S. CONST. amend. VII; *Chauffeurs, Teamsters and Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 564 (1990).

Because this case now only involves federal equitable claims, there is no right to a jury trial. *See New Century Fin., Inc. v. New Century Fin. Corp.*, No. C-04-437, 2005 WL 8156726, at *1 (S.D. Tex. Dec. 13, 2005) ("If Plaintiff is seeking purely equitable type relief, i.e., injunction or accounting or disgorgement of Defendants' profits, then Plaintiff does not have a right to a jury trial; rather it is the Court that determines whether to grant such equitable relief."); *Sanijet*, 2002 WL 1398546, at

\*2 (holding that "in such Lanham Act cases where only injunctive relief is sought, no right to a jury trial exists" and explaining that requests for attorney's fees and costs under the Lanham Act are equitable); *Septum, Inc. v. Keller*, 614 F.2d 456, 463 (5th Cir. 1980) (Brown, J., concurring in part) (noting that declaratory relief is an equitable remedy); *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 962 (9th Cir. 2001) ("[T]here is no right to a jury on the equitable defense of laches."). So the demand for a jury trial will be stricken.

## IV. CONCLUSION

For the foregoing reasons, it is **ORDERED** that Le-Vel's Motion to Amend Complaint, (Dkt. #110), is **GRANTED**. Le-Vel's First Amended Complaint, (Dkt. #111), is deemed properly filed.

It is further **ORDERED** that Le-Vel's Motion to Strike Jury Demand, (Dkt. #101), is **GRANTED**, and the demand for a jury trial is **STRICKEN**.

Pursuant to Rule 39(a)(2), this action shall be taken off the jury docket and set for a bench trial.

**So ORDERED and SIGNED this 28th day of March, 2022.**

SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE